118 So.2d 112 (1960)
Carl MANN and Marion Mann, Appellants,
v.
Mary K. THOMPSON et al., Appellees.
No. B-257.
District Court of Appeal of Florida. First District.
February 18, 1960.
*113 Mabry, Reaves, Carlton, Fields & Ward, Tampa, for appellants.
Brannon, Brown, Smith & Norris, Lake City, for appellees.
WIGGINTON, Chief Judge.
Plaintiffs have appealed from a decree entered upon their petition for restitution filed subsequent to and in pursuance of this court's opinion and mandate rendered on the first appeal of this cause. It is plaintiffs' contention that the chancellor erroneously refused to award them certain damages which they suffered by having complied with the original final decree entered in the cause, which decree on appeal was reversed in part and affirmed in part.
After entry of the original decree which denied Mann the relief prayed for and ordered that he surrender possession of the disputed property to defendants, Mann applied for and procured the entry of an order fixing the terms and conditions of a supersedeas bond in the sum of $5,500. After the entry of the supersedeas order Mann elected not to file the bond required thereby, but appealed from the final decree without the benefit of supersedeas or stay of execution. In compliance with the requirements of the decree that Mann vacate the property in question, he voluntarily gathered the several hundred head of cattle which he had pastured on the land, disposing of some of them by sale, and transporting the remainder to other pasturage.
In our opinion rendered on the first appeal of this cause,[1] we affirmed that part of the decree which denied Mann's prayer for specific performance of an alleged oral lease with defendants covering approximately 35,000 acres of land. It was further held, however, that a prior written lease between Mann and defendants covering 6,500 acres of land theretofore used for cattle raising purposes and alleged to be included in the subsequent oral lease was valid, and the portion of the decree which held this written lease to have been effectively cancelled was reversed.
Upon the issuance of this court's mandate Mann filed a petition for restitution which prayed that the term of his 6,500-acre lease which this court held to be valid be extended to include the period of time during which the case was on appeal. The petition further prayed that Mann be awarded a judgment for loss of and damage to his cattle together with expenses incurred by him incidental to their removal in compliance with the original decree, and for the expenses which will be incurred by him in restocking the land with cattle. The amount of these damages is alleged to be approximately $13,000.
Upon plaintiff's petition for restitution, the chancellor entered a decree extending the term of the lease to include the period of time during which the case was on appeal in this court. The decree held, however, that since Mann failed to supersede the original decree upon the entry of his appeal, and since it appeared from the evidence that defendant had received no profit from the eviction of plaintiffs under the decree *114 other than the mere possession of the land, the plaintiffs' claim for damages incidental to the removal of his cattle from the 6,500-acre tract and restocking the same was denied. It is from that portion of the decree denying Mann damages by way of restitution that this appeal is taken.
It cannot be doubted, and indeed is not even denied, that Mann expended substantial sums of money and incurred certain stated losses in the gathering and removal of his cattle from the disputed property pursuant to the requirements of the original decree later held to be erroneous. The prime question for our consideration is whether the chancellor abused his discretion in denying Mann's recovery of such expenses and losses incurred by him under the facts in this case. This precise question is one of first impression in Florida.
It seems to be the settled law of this state that in considering a petition for restitution by a judgment debtor upon reversal of an erroneous judgment or decree, the trial court shall determine entitlement to restitution and the extent, manner and form in which it shall be made through the application of equitable principles to the facts adduced before it. In this connection, the court's discretion exercised pursuant to its inherent power to correct its errors will not be disturbed absent a showing of abuse.[2]
The chancellor's denial of plaintiff's claim for the loss he suffered in complying with the erroneous decree is predicated upon the two factors expressed in the decree now under examination. The first factor considered by the court as grounds for denial was plaintiffs' failure to supersede the final decree upon the entry of their appeal. Appeals from final judgments and decrees are a matter of right under the Constitution and laws of this state, and if an appellant determines to appeal without posting a supersedeas bond, it is his privilege to do so.[3] An appellant's election not to take the steps necessary to supersede or stay the judgment or decree pending appeal does not as a matter of law bar his entitlement to restitution upon reversal by the appellate court.
Appellants strenuously urge that the law requires that they be awarded restitution from defendants in a sum equivalent to the full monetary loss they have sustained by having complied with the erroneous decree. In support of this position appellants cite decisions of our Supreme Court which hold that on the reversal of a judgment or decree the law raises an obligation in the party to the record who has received the benefit of the erroneous judgment or decree to make restitution to the other party for what he has lost, the mode for effecting restitution to be varied according to circumstances. It is held that it is the duty of the court upon proper application by petition or motion to investigate the facts and by proper order to cause the appellants to be restored to all things which they have lost by reason of the decree which has been reversed.[4] It is appellant's position that the word "lost" as employed by our Supreme Court in its statement of the rule includes not only all benefits gained by the judgment creditor under the erroneous decree during appeal, such as rents, issues or profits derived from the disputed land or property involved in the suit, or the property itself, but includes also all other damages which the judgment debtor may have incidentally sustained by having complied with the erroneous decree.
The general rule governing restitution confines recovery to money which has *115 been paid under the erroneous judgment together with interest thereon, or property which the judgment debtor has transferred, or of which he has been dispossessed, together with the rents, issues or profits therefrom.[5] As explained by Justice Cardozo, a cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function.[6] The claimant, to prevail, must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it. As a corollary to the foregoing general principle it seems equally well settled that while a judgment debtor is entitled to compel the fullest restitution of all benefits which the judgment creditor has received on account of the enforcement of the erroneous judgment or decree, the latter cannot be compelled to make good all the damages which the judgment debtor may have sustained by his neglect to stay proceedings pending the appeal.[7] If the contrary were true, the law which authorizes supersedeas to stay proceedings pending appeal would be rendered nugatory and meaningless. There would be no incentive for a judgment debtor in any case to secure supersedeas if it were held that the judgment creditor assumed liability for all damages which might result from compliance with or the enforcement of the judgment pending appeal, and prior to its reversal.
We have carefully examined all of the decisions cited in the able briefs filed by the parties to this appeal in which our Supreme Court has passed or commented upon the principles which govern restitution following reversal of an erroneous judgment. Our examination reveals that in each instance the measure of the loss sustained by the judgment debtor under the erroneous decree for which restitution was allowed was exactly that which was gained by the judgment creditor either in money, property, or the rents, issues, or profits derived therefrom during the pendency of the appeal.[8] To the same effect is the measure of restitution allowed by courts of other jurisdictions.[9]
In support of the principle urged by appellants, they cite numerous decisions both from this and other jurisdictions involving tort actions brought by tenants wrongfully evicted by their landlords in which it has been held that the measure of damages shall include all special damages as proximately result from the wrongful eviction, such as loss of business profits, professional earnings, necessary expenses incurred and injury to goods resulting from being evicted from the premises, and damages of similar character.[10] We see a clear distinction between the rule of law governing damages recoverable in a tort action resulting from wrongful eviction of a tenant by his landlord, and the equitable principles which govern the allowance of restitution to a judgment debtor upon reversal of an erroneous *116 judgment. The rule governing the former class of case is not applicable to the latter.
Appellants have cited no decision of another court, and our research has revealed none, in which a loss of the kind claimed here has been allowed in proceedings for restitution. A judgment is an act of the law. Neither party can control the court, and neither is responsible for its act. The court's determination, proceeding from a power above the litigants, is in no sense their act. And a party to a cause does not procure the judgment in any such sense as to render him responsible for the incidental consequences thereof, or for its reversal by an appellate court.
To engraft upon the doctrine of restitution the theory advocated by appellants would cause a successful litigant to consent to the entry of a favorable judgment only at the risk of being required to make restitution in an amount greater than the benefits he would receive under the judgment in the event it is subsequently set aside or reversed on appeal. There is no support in reason or authority for an extension of the doctrine of restitution to cover an award of damages which the restorer never received, and so in no true sense could restore.[11] We therefore conclude under the facts disclosed by this record that the chancellor did not err in holding that the interim judgment debtor was not entitled as restitution to a judgment for the damages claimed by him.
Appellants having failed to demonstrate an abuse of discretion by the chancellor in his denial of the damages claimed as restitution under the facts in this case, the decree appealed from is affirmed.
STURGIS, J., and FITZPATRICK, W.L., Associate Judge, concur.
NOTES
[1] Mann v. Thompson, Fla.App. 1958, 100 So.2d 634.
[2] State ex rel. Hill v. Hearn, Fla. 1957, 99 So.2d 231; Wall v. Johnson, Fla. 1955, 80 So.2d 362.
[3] Horn v. Horn, Fla. 1954, 73 So.2d 905.
[4] Florida East Const R.R. Co. v. State, 77 Fla. 571, 82 So. 136; Maxwell v. Jacksonville Loan & Improvement Co., 45 Fla. 468, 34 So. 255.
[5] 5B C.J.S. Appeal and Error, § 1983, pp. 626, 627.
[6] Atlantic Coast Line R. Co. v. Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451.
[7] 3 Am.Jur., Appeal and Error, § 1256, p. 749; Thompson v. Reasoner, 122 Ind. 454, 24 N.E. 223, 7 L.R.A. 495; Bridges v. McAlister, 106 Ky. 791, 51 S.W. 603, 45 L.R.A. 800; Lytle v. Payette-Oregon Slope Irrigation Dist., 175 Or. 276, 152 P.2d 934, 156 A.L.R. 894.
[8] See cases cited footnote 4; State ex rel. Hill v. Hearn, Fla. 1957, 99 So.2d 231; Hazen v. Smith, 101 Fla. 767, 135 So. 813.
[9] Waggoner v. Glacier Colony of Hutterites, 1957, 131 Mont. 525, 312 P.2d 117; Burns v. Bines, 1948, 189 Md. 157, 55 A.2d 487, 57 A.2d 188.
[10] Young v. Cobbs, Fla. 1959, 110 So.2d 651; Hankins v. Smith, 103 Fla. 892, 138 So. 494; Diamond Cattle Company v. Clark, 1937, 52 Wyo. 265, 74 P.2d 857, 116 A.L.R. 912; Wade v. Herndl, 1906, 127 Wis. 544, 107 N.W. 4, 5 L.R.A.,N.S., 855; 32 Am.Jur., Landlord and Tenant, § 267.
[11] Tenth Ward Road Dist. No. 11 v. Texas & P. Ry. Co., 5 Cir., 12 F.2d 245, 45 A.L.R. 1513.