406 So.2d 1124 (1981)
Larry LONERGAN, a/k/a Lawrence D. Lonergan, Appellant,
v.
Ida O. LIPPMAN, Sara O. Morgan, and Anne O. Grunthal, Appellees.
No. VV-249.
District Court of Appeal of Florida, First District.
March 27, 1981.
Rehearing Denied January 5, 1982.
Arnold H. Slott of Black & Slott, P.A., Jacksonville, for appellant.
C. Ray Greene, Jr. of Greene & Greene, Jacksonville, for appellees.
MILLS, Chief Judge.
This is the third appearance in this court of ongoing litigation between the parties. The controversy between the parties began when appellees brought suit to foreclose a mortgage on the Sandpiper Hotel which housed the premises upon which Lonergan held a lease. On 27 May 1977 the trial court granted summary final judgment in favor of appellees and ruled that the mortgage was superior to Lonergan's lease and ordered the sale of the hotel. Appellees purchased the property.
Lonergan appealed the ruling to this court, but did not post a supersedeas bond. In September of 1977, the appellees refused to accept the rent due under the lease and, characterizing the tenancy as a tenancy at will, demanded $2,000 per month plus sales tax. Lonergan refused to pay the increased rent and paid the amount of $320 plus sales tax into escrow during the pendency of the case. In October, appellees filed suit for double rent for a tenant holding over. The building which contained, among other things, Lonergan's place of business was in disrepair and the City of Jacksonville Beach notified appellees or appellees' predecessor in title to fix up the building or to have it razed. On 25 June 1978, while the appeal was still pending, the Sandpiper Hotel was razed by the City of Jacksonville Beach. On 12 December 1978, this court reversed the final summary judgment of foreclosure. Lonergan v. Lippman, 365 So.2d 420 (Fla. 1st DCA 1978).
Subsequently, after further proceedings, the trial court entered a final judgment holding that Lonergan's lease was superior to the mortgage. That decision was affirmed by this court in Lippman v. Lonergan, 380 So.2d 461 (Fla. 1st DCA 1980). Lonergan was allowed to amend his answer *1125 to plead the lease and to file a counterclaim for damages for destruction of the leasehold estate in the action for double rent initiated by appellees. The trial court granted appellees' motion for summary judgment as to this counterclaim, ruling:
It affirmatively appears from the record without dispute that defendant's leasehold interest was terminated by foreclosure proceedings prior to the demolition of the building in question. Therefore, defendant had no leasehold estate which was capable of being destroyed.
It is this judgment that is on appeal now. We reverse.
Appellees urge that the final judgment of the trial court was in full force and effect until stayed or reversed and since Lonergan did not file a supersedeas bond and the building was destroyed before this court reversed the final judgment, appellees acted within their rights and are not responsible for any damages to him. While it is true that at the time the building was razed the leasehold interest stood terminated by the trial court's ruling in the foreclosure action, it is also true that once the trial court's ruling was reversed on appeal, the "... cause after reversal stood as though no decree had been rendered." Marshall & Spencer Co. v. People's Bank of Jacksonville, 88 Fla. 190, 101 So. 358 (1924). Once the earlier judgment no longer existed, the leasehold interest was not terminated and Lonergan did have a leasehold estate which was capable of being destroyed.
It would be unconscionable to allow a prevailing party in the trial court to destroy or dispose of the underlying property in a dispute while the case was on appeal and then have no liability or responsibility to the other party when that final judgment was reversed and the loser was unable to restore the status quo.
An argument similar in result to that of appellees was involved in Lowman v. Young, 212 So.2d 88 (Fla. 1st DCA 1968). There the appellee had urged that since the summary judgment which was on appeal had not been superseded while the appeal was pending and the foreclosure decree had been executed and the property had been sold at the foreclosure sale, any questions raised in the appeal were then moot and the appellant was not entitled to restitution even if the trial court judgment was held to be erroneous. This argument was found to be without merit. A person is not required to take supersedeas or to secure a stay in order to appeal a judgment; and just as the issues raised in the appeal are not mooted by the trial court's enforcement of the final judgment, his rights are not abolished when the opposing party suffers the underlying property on which a property right is based to be destroyed.
Appellees' reliance on Mann v. Thompson, 118 So.2d 112 (Fla. 1st DCA 1960), is misplaced. In Mann, the trial court had invalidated a cattle pasturage lease and that ruling was appealed. After the appellate court reversed the trial court ruling, the use of the pasture was returned to Mann, but he sought restitution for the damages and losses incurred in moving and disposing of the cattle and for expenses in restocking the land with cattle. There the trial court denied the claim for such damages and this court affirmed because the claim was for damage that occurred as an incidental consequence of the enforcement of the trial court's judgment. Lonergan is not here seeking to recoup the expense of first vacating and then re-establishing his business; he is seeking damages for the destruction of the very property at issue in the suit, his leasehold estate.
REVERSED and REMANDED for proceedings consistent with this opinion.
WENTWORTH, J., concurs.
ROBERT P. SMITH, Jr., J., dissents.
ROBERT P. SMITH, Jr., Judge, dissenting:
I do not agree that the mortgagee, now having become the owner through foreclosure and purchase at judicial sale, is liable to the tenant in damages because the City razed the structure housing the leased premises. The City razed the Sandpiper Hotel at a time when the new owner owed *1126 the tenant no duty to preserve the building against that action, even assuming the old owner had that duty under the lease or by operation of law and assuming the new owner would have had the same duty had the building stood when the tenancy, dissolved by a judgment, was revived by its reversal. At the time the building was razed upon the new owner's refusal to spend nearly $60,000 to repair it, any affirmative duty to repair, owed by landlord to tenant, was dissolved by a subsisting judgment which was under appellate review but not reversed or superseded. In my opinion the owner was not then obliged to spend $60,000 to prevent the City's intervention and thereby to preserve a tenantable building against the possibility of an appellate judgment reviving the tenancy.
Upon reversal of a judgment on appeal, the sole obligation of him whom the judgment favored is to make restitution to his adversary of everything in specie, not the value but the thing, which he took in consequence of the judgment and which is still in his possession. A. Freeman, Law of Judgments, §§ 1168, 1169 (5th ed. 1925):
Upon the reversal of the judgment against him, the appellant is entitled to restitution from the respondent of all the advantages acquired by the latter by virtue of the erroneous judgment... . [T]he successful appellant is entitled to a restitution of everything still in possession of his adversary in specie; not the value, but the thing. .. .
... But a subsisting judgment, though afterwards reversed, is a sufficient justification for all acts done by plaintiff in enforcing it prior to the reversal. The obligation to make restitution is not based on the theory of tort. Consequently the plaintiff is not liable in damages for his lawful acts done under the judgment or for loss or damage to the property taken, occurring without his fault. Otherwise there would be little necessity or inducement for an appellant to obtain a stay or supersedeas.
The Restatement of Restitution, § 74 (1937), is in accord. See Illustration 15:
In an action of ejectment brought by A against B, A obtains possession of Blackacre which he occupies for two years, until the judgment is reversed. During that period fires for which A was not at fault destroy valuable timber upon Blackacre. B is entitled to restitution of Blackacre but not to compensation for the loss.
And Mann v. Thompson, 118 So.2d 112 (Fla.1st DCA 1960), is also in accord. This court denied that tenant's claim against his landlord for compensatory damages sustained upon the tenant's removal pursuant to a judgment not superseded but later reversed. Mann quite clearly limited the prevailing tenant's restitution to any tangible benefit taken in hand during the appeal by the judgment creditor and remaining in his hands available for restitution:
There is no support in reason or authority for an extension of the doctrine of restitution to cover an award of damages which the restorer never received, and so in no true sense could restore. (118 So.2d at 116)
In no true sense can Lippman restore the Sandpiper Hotel building to Lonergan's possession. It is gone, not into Lippman's hands but into oblivion, destroyed by an act of government which Lippman was not obliged to prevent at the time it occurred. Thus is Lowman v. Young, 212 So.2d 88 (Fla.1st DCA 1968) distinguished; the subject property was in existence and capable of being restored to the prevailing party. At the time the City of Jacksonville Beach razed the Sandpiper building, an expenditure of $60,000 was necessary to preserve it. The trial court's order fixing the amount of supersedeas, sought by Lonergan, conditioned a stay of judgment upon Lonergan posting an $80,000 bond, which Lonergan declined to provide. The repairs were therefore not made, the building was razed, and (Lonergan appears to concede) the tenancy was terminated.
I would affirm the trial court because Lonergan's action seeks no true restitution but damages, because the only thing taken from Lonergan, the building, was taken by a governmental act which Lippman was not *1127 obliged to prevent, and because Lippman cannot hand back to Lonergan a building which no longer exists.